THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ALBERT CURNUCH, Defendant.

County Court, Kings County, November 24, 1941.

*William O'Dwyer, District Attorney [Frank DiLalla, Assistant District Attorney, of counsel], for the plaintiff.*

*Daniel A. Riordan, for the defendant.*

FITZGERALD, J. Defendant has been indicted for manslaughter in the second degree and for criminal negligence in the operation of a vehicle resulting in death. Prior to the enactment of section 1053-a of the Penal Law (Laws of 1936, chap. 733), gross negligence in the operation of a vehicle was manslaughter in the second degree. (Penal Law, § 1052; *People* v. *Scanlon*, 132 App. Div. 528; *People* v. *Grieco*, 266 N. Y. 48, 51.)

The enactment of section 1053-a of the Penal Law removed from the category of homicide, reckless or culpable negligence in the operation of a vehicle resulting in the death of a human being, and established a crime unknown to the common law, and characterized as " criminal negligence in operation of a vehicle resulting in death." (Penal Law, § 1053-a.)

The defendant was a motorman on the elevated railroad. On the morning of May 27, 1941, he was operating a six-car train on the Broadway elevated line. The deceased and two others were working on the tracks. After the train passed where they were working

deceased was picked up on the street dead. The medical examiner testified that the deceased was " a white man, thirty-six years of age; one hundred and seventy pounds; five feet, six inches tall. He was bleeding from the nose; two black eyes; laceration of the left temple scalp one inch long, leading from the left ear, and laceration of the left ear. Mutiple abrasions of the left side of face and forehead   *   *   *   and neck; fracture of the left shoulder and across the chest, both sides. The cause of death was determined as crushed chest."

Defendant testified that as he pulled out of the Gates Avenue Station something blew into his eye; it pained severely; he rubbed his eye with his left hand, and when he stopped he saw the three men. He threw the train into emergency, came to a stop, and inquired whether any one had been hit. He understood one of the two men to say deceased had jumped.

Joseph Mehling and Harry Olsen were working with the deceased between the rails of the oncoming train. Neither of them saw him struck by the train. Whether he jumped, or stumbled and fell in avoiding the train they did not know. Mehling did not see any blood on the railroad ties, and Detective Cavanagh testified that there was no blood on the ties or rails or on the car.

Whether the train operated by defendant was a vehicle within the meaning of section 1053-a of the Penal Law may well be doubted. The Standard Dictionary (Funk & Wagnalls Co., 1898) defines a vehicle as every thing " in or on which anything may be carried; especially a mechanism or contrivance fitted with wheels or runners for carrying something; a conveyance, as a carriage, wagon, car or sled; specifically in law, any artificial contrivance used or capable of being used as a means of transportation on land." While this definition seems to be all-inclusive, and sufficiently broad to cover a train of cars, it is not necessarily conclusive. For instance in subdivision 7 of section 2 of the Vehicle and Traffic Law (Laws of 1930, chap. 756) it is provided that " ' Vehicle ' shall include any device in, upon or by which any person or property is or may be transported or drawn upon a public highway, except a baby carriage and devices used exclusively on stationary rails or tracks." In *Monongahela Bridge Co.* v. *Pittsburgh & Birmingham R. Co.* (114 Penn. St. 478, 484; 8 A. 233), a street car was held not to be a vehicle under a statute referring to " other wheeled vehicles of whatsoever description."

Recalling the underlying reason for taking reckless operation of automobiles resulting in death from the category of homicide, it is extremely doubtful that the Legislature contemplated the inclusion of elevated trains in the term " vehicle."

In view of the testimony before the grand jury, however, it is unnecessary to determine within which count of the indictment the facts necessary to indict would fall.

There is a complete failure of evidence to sustain a finding that deceased was struck by the train operated by defendant. As heretofore pointed out, deceased may have been struck, he may have jumped, or he may have stumbled and fallen. Unless the evidence justifies the irresistible conclusion that the deceased was struck by the train, the indictment cannot stand.

It is definitely settled that where reliance is upon circumstantial evidence to establish guilt, the evidence must exclude to a moral certainty every other reasonable hypothesis. It is of no value if the circumstances are consistent with either the hypothesis of innocence, or the hypothesis of guilt. (*People* v. *Razezicz*, 206 N. Y. 249; *People* v. *Place*, 157 id. 584; *People* v. *Harris*, 136 id. 423; *People* v. *Fitzgerald*, 156 id. 253; 3 Ency. of Evidence, p. 70; *People* v. *Bennett*, 49 N. Y. 137; *People* v. *Giordano*, 213 id. 575.)

As the evidence before the grand jury does not exclude to a moral certainty the hypothesis of innocence, but is as consistent with defendant's innocence as with his guilt, the indictment must fall.

Indictment dismissed. Defendant discharged. Bail exonerated.