[Crim. No. 1309. Fourth Dist. May 2, 1957.]

THE PEOPLE, Respondent, v. LARRY ALLEN KEMP, Appellant.

Edgar B. Hervey, James Edgar Hervey and Henry F. Walker for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The appellant and one Jack Coffin were jointly charged with the crime of manslaughter (violation of Pen. Code, § 192, subd. 3, par. (a)). It was charged that on March 10, 1956, they unlawfully and without malice, while driving and operating an automobile, and while in the commission of an unlawful act not amounting to a felony, with gross negligence, killed one Ralph Rook. At the trial the defendants called no witnesses and submitted no instructions. A jury found them both guilty as charged, and further found that the act causing death was done with gross negligence. Probation was granted to each defendant on certain conditions, including the serving of nine months in jail and the suspension of driving licenses for one year. The defendant Kemp has appealed from the order denying his motion for a new trial.

The accident happened about 5:40 p.m. at the intersection of Oregon and Monroe Streets in a residence section of San Diego. Oregon Street runs north and south, and Monroe east and west. A block to the south of Monroe, Meade Street, also crossed Oregon and there were stop signals at that intersection. The block on Oregon between Meade and Monroe is some 600 feet long. On this occasion Kemp was driving north on Oregon in a Chevrolet in which a Cadillac engine had been installed. While he was stopped at the stop sign at Meade, an Oldsmobile driven by Coffin pulled up on his right and also stopped. Both cars then proceeded north on Oregon at a high rate of speed, the Chevrolet being near the middle of the street and the Oldsmobile about five feet to its right except for a time in the middle of the block when the Oldsmobile came over to within about two feet of the Chevrolet. When these cars were about 50 feet south of the south curb line of Monroe they were abreast, and the drivers then ceased to accelerate their speed. At that point Kemp pulled sharply to the left, and Coffin pulled to his right, both trying to avoid another car that had entered the intersection and was proceeding east on Monroe. Kemp succeeded in missing that other car, by cutting to the extreme southwest corner of the intersection, and he then drove west on Monroe, without stopping. As Coffin's car passed through the intersection it struck the eastbound car and Rook, who was a passenger in that car, died as a result of injuries received in that collision.

An eyewitness, who was standing on the east side of Oregon some 200 feet north of Meade, and facing Meade, testified

that both cars started off with "a little bit of a spin of the wheels"; that they proceeded north on Oregon accelerating constantly until a little way back from Monroe; that when they passed him they were going about 35 miles an hour and running "neck and neck"; that passengers in the two cars made movements which are highly suggestive of a race; that the cars were making a noise of acceleration and ceased accelerating at a point about 50 feet from the Monroe intersection; that at that time the cars were approximately abreast; that while traveling this block they reached a maximum speed of approximately 55 miles per hour; that he got a glimpse of the other car traveling east on Monroe, and that it was going about 15-20 miles per hour; that the Chevrolet veered left, coming close to the southwest corner of the intersection and going on west on Monroe; that the Oldsmobile pulled to its right, proceeded into the intersection and collided with the eastbound car; and that he heard a short screech of brakes and saw the collision.

Shortly after the accident the appellant Kemp answered questions asked by an investigator in the district attorney's office, the matter being taken down in shorthand. Portions of the statements thus made were admitted in evidence as against Kemp alone, and were read to the jury. In reply to these questions he stated, among other things, that he had never seen Jack Coffin before; that while he was crossing Meade, Coffin pulled up beside him; that "I started across at a pretty good speed"; that "We finally passed each other and kept on going"; that "I always accelerate pretty good, reach a certain speed and knock off"; that he thought he was going between 30 and 35 miles per hour; that he could have been going more than 35 miles per hour; and that he doubted that he was going 45 miles an hour. When asked if he was not racing to keep ahead of Coffin he said, "No, he passed me." When asked whether, while in the middle of the block, he was racing to see that Coffin did not pass him he answered, "No, not especially. If I didn't want him to pass me, he never would." He also stated that Coffin was ahead of him "most of the way down the block"; and that when Coffin passed the Monroe intersection he (Kemp) must have been six or seven car-lengths behind. He further stated that after the accident he went on to La Mesa and did not stop at his home; that he changed his mind about going home for a good reason; that the reason was "I didn't want to get involved"; that he was afraid the witnesses might be out looking for him; and that

he did not go home for several hours. When asked why he left the scene if he knew there was an accident he said he did not want to get involved in it. When asked why he felt he might become involved he said, "Because I was speeding down the street. I mean—not speeding, but I was with him most of the way down there." " . . . I did reach over the speed limit, yes. That still doesn't mean I was racing." .

There was ample evidence that the intersection of Oregon and Monroe Streets was a "blind" intersection within the meaning and intent of section 511, subdivision (a) (3), of the Vehicle Code. There was ample evidence that these cars traversed the block between Meade and Monroe and entered the Monroe intersection at a high rate of speed, and it could reasonably be inferred from the evidence that Kemp and Coffin were racing while traversing that block.

Appellant's main contention is that even though he may have been guilty of reckless speeding, and even though he and Coffin were racing their vehicles on a public street, he could not be held criminally liable since he struck nothing and since this death was caused solely by the speed and reckless driving of Coffin. In this connection it is contended that there was no showing of anything attributable to him which was a proximate cause of the death, as required by section 192 of the Penal Code. It is argued that the mere violation of section 601.5 of the Vehicle Code prohibiting speed contests on a highway is immaterial, like the failure to have a required license to drive, and could not constitute a proximate cause of the death; that the thing that caused this death is either excessive speed (violation of § 510) or reckless driving (violation of § 505) on the part of Coffin; that Coffin's violation of either of those sections was neither attributable nor imputable to Kemp; that Kemp neither interfered with nor had control of the actions of Coffin; and that it follows that he could not have been guilty of any unlawful act, or of any gross negligence, which was a proximate cause of this death.

The appellant relies on the case of *People* v. *Lemieux*, 176 Misc. 305 [27 N.Y.S.2d 235], in which it was held that where a passenger in one of two racing automobiles was thrown out and killed the driver of the other racing automobile, which was a block away, was not criminally liable under a statute denouncing criminal negligence in the operation of a vehicle resulting in death; and on the English case of *Rex* v. *Mastin*, 6 C.&P. 396, 172 Eng.Rep. (N.P.) 1292, involving the riders

of two horses. The Lemieux case involved a charge under section 1053a of the New York Penal Law which provides that a person who operates a vehicle in a reckless manner whereby a human being is killed is guilty of criminal negligence in the operation of a vehicle resulting in death. Prior to the enactment of that statute the killing of a human being in the operation of a motor vehicle was treated as manslaughter in that state. Since the enactment of that statute such a killing is no longer treated as manslaughter. (*People* v. *Curnuch,* 177 Misc. 606 [31 N.Y.S.2d 105].) The New York statute by its terms clearly applies only to the person operating the vehicle at the time in question. Section 192 of our Penal Code does not expressly use such restrictive language and such language should not be read into it, at least until such time as suitable provision is made by a replacing statute. In a later English case, (*Reg.* v. *Swindall,* 2 Car.&K. 230, 2 Cox. C.C. 141) involving the fast driving of two horses, it was contended that since only one of the defendants had driven over the deceased the other must be acquitted. The court said: ''Not so. If two persons are together, inciting and encouraging one another to do an unlawful act, and one of them does it, the other is equally guilty.''

The evidence here strongly indicates that Kemp and Coffin were inciting and encouraging one another to drive at a fast and reckless rate of speed on a residence street and as they closely approached a blind intersection. It was by the merest chance that Kemp was able to avoid hitting the other car, and that Coffin was not. Only the matter of a split second and a few inches made the difference. They were both violating several laws, the acts of both led directly to and were a proximate cause of the result, and the fact that the appellant happened to narrowly escape the actual collision is not the controlling element. The evidence is sufficient to show that they were not acting independently of each other, and that they were jointly engaged in a series of acts which led directly to the collision. The language of section 192 of the Penal Code is broad enough to impose criminal liability in this situation and the evidence, with the reasonable inferences therefrom, is sufficient to show that the homicide was a proximate result of the commission of an unlawful act or acts on the part of the appellant, within the meaning of that section. A petition for a writ of prohibition, based on the same contention that since Kemp could not be held criminally liable for manslaughter no probable cause appeared, was denied by this court

(*Kemp* v. *Superior Court,* 4 Civil, 5421) ; and a hearing in the Supreme Court was denied (on the merits and not for a jurisdictional reason). We still adhere to the views suggested by the denial of that petition.

It is further contended that the court erred in giving a number of instructions to the jury. Error is first assigned in the giving of ten instructions defining negligence, gross negligence and proximate cause, and giving various rules in connection therewith. It is argued that section 20 of the Penal Code provides that in every crime there must exist a joint operation of act and intent or *criminal negligence*; that these instructions in effect told the jury that a conviction could be had on mere negligence, simple or gross, as distinguished from criminal negligence or from an unlawful act not amounting to a felony; that this is contrary to the requirement of section 20 that there must be criminal negligence; that these instructions were not only incorrect but conflicted with other given instructions, so that it cannot be ascertained upon what basis the jury returned its verdict; that while the evidence was sufficient to find that Coffin was guilty of an unlawful act in driving his vehicle with gross negligence, this is not necessarily true as to Kemp; that Kemp took some care by turning before he reached the curb line of Monroe, and he could not be said to have been grossly negligent; that under the instructions mere negligence on Kemp's part, contributing substantially in conjunction with an intervening act, could be taken as imposing liability upon him; and that the jury might thus have found him guilty if he had been guilty of ordinary negligence and if Coffin was guilty of an unlawful act with gross negligence; and that the jury might thus have been misled.

While section 20 of the Penal Code requires criminal negligence as one alternative, section 192 covers negligence whether gross or not and makes either one criminal negligence under the circumstances named. That section is to be harmonized with section 20. (*People* v. *Wilson,* 78 Cal.App.2d 108 [177 P.2d 567].) Each of the instructions complained of must be considered in the light of the entire charge given the jury, and when all are read together it is apparent there was no conflict between these instructions and others which were given. The jury was instructed as to all elements of the crime charged, including the matter of proximate cause, and it was not necessary that all parts of each instruction be repeated as a part of every other instruction. From a reading of the instructions we are convinced that the jury was fully

and properly instructed on the degree of negligence required to convict. It is apparent that the jury was not misled in the respect here complained of, since it specifically found that the death in question was caused through gross negligence. No reversible error appears in this connection.

 It is next contended that the court erred in instructing the jury that the prima facie speed limit in a residence or business district was 25 miles per hour; that driving in excess thereof is presumed to be unlawful and the presumption is controlling unless it be shown that the basic speed law was not violated, and in giving the statutory definition of "residence district" (Veh. Code, § 90) without giving the qualifying limitations (Veh. Code, § 90.1). It is argued that these instructions were prejudicially erroneous since there was no evidence that Oregon Street was signposted with any speed restriction signs, and no evidence as to whether or not it was a state highway. It is also argued that while there was testimony as to the number of houses in three blocks on Oregon there was no evidence as to how close these houses were to the street, or as to how many of these houses had any access to the street.

There was testimony that the block on Oregon between Monroe and Meade had eleven dwellings on the west side, and a school on the east side; that the block on Oregon north of Monroe contained 27 dwellings and a store; and that the block on Oregon south of Meade, between Meade and El Cajon Boulevard, had eighteen houses, nine on each side. The officer who testified to this testified that there were a certain number of dwellings "on" Oregon Street, in these three blocks, and on the respective sides thereof. The situation in the residence sections of cities is well known, and it need not be assumed that this jury lacked ordinarily intelligence. When dwellings are said to be "on" a certain street it may reasonably be inferred that they have access to that street. The court instructed the jury concerning the basic speed law, and also the prima facie speed limits, as set forth in sections 510 and 511 of the Vehicle Code. It cannot reasonably be thought that the jury could have been misled or that prejudice could have resulted under the circumstances here appearing. It would be unreasonable to believe that the jury was in any way influenced by the presence or absence of any evidence as to whether Oregon Street had been signposted for any particular speed. It sufficiently appeared beyond any reasonable doubt that Kemp and Coffin were also violating the

basic speed law and the blind intersection statute, neither of which laws depends upon the posting of signs, and it cannot be held that any errors in this connection could have affected the result. The court qualified its statement that to drive in excess of the prima facie limit is presumed to be unlawful, and such presumption is controlling unless it is shown that the basic speed law was not violated, by stating ''that presumption is controlling unless the evidence shows that the defendant did not violate the basic speed law, or you entertain doubt whether or not he did so.''

It is further contended that the court erred in giving instructions which defined confessions and admissions, and as to silence in the face of accusations, and in failing to instruct on the necessity for proof of the corpus delicti in that connection. It is argued that the statements of Kemp which were read to the jury did not constitute a confession and that they contained no accusatory statements made to him. Also that, while it may have been proper to instruct on admissions, the jury was not told that an admission may not be considered in the absence of proof of the corpus delicti. There was ample evidence establishing the corpus delicti outside of any admissions of the appellant and, in any event, the failure to instruct as to that was not reversible error. (*People* v. *Chan Chaun*, 41 Cal.App.2d 586 [107 P.2d 455]; *People* v. *Clark*, 117 Cal.App.2d 134 [255 P.2d 79].) The statements made by the appellant sufficiently warranted the giving of these instructions and neither prejudice nor error appears.

Finally, it is contended that the court erred in giving an instruction upon aiding and abetting, in the absence of supporting evidence. It is argued that in giving this instruction the court failed to also tell the jury that one who aids and encourages the commission of an offense is not deemed by law to be guilty unless what he did was done knowingly and with criminal intent. Not only was this element covered in other instructions, but the instruction in question was limited in its application to persons ''who knowingly and with criminal intent aid and abet in its commission.'' Most of the argument in this connection is based upon appellant's basic contention that he struck nothing, and that nothing that he did personally could be said to have proximately resulted in this death. We are unable to see how anything in this instruction could have been sufficiently prejudicial to justify a reversal.

It cannot be held that the evidence here is insufficient as a

matter of law to support this conviction, as appellant argues. It cannot be held that any errors which may appear were such as to deny to the appellant a fair trial, and it does not appear reasonably probable that any such errors could have affected the result or that a different verdict could reasonably be expected in the event of a new trial. The evidence of guilt was clear and convincing, and it would appear that the punishment imposed was very light and much more favorable to the appellant than it might well have been.

The order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.