**LEE & PALMER, INC., Plaintiff,**

v.

**EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, INC., Defendant.**

**No. 72 Civ. 1432.**

United States District Court, S. D. New York.

June 25, 1973.

Healy & Baillie, New York City, for plaintiff; Raymond A. Connell, New York City, of counsel.

Alexander, Ash, Schwartz & Cohen, New York City, for defendant; Sidney A. Schwartz, Irwin H. Haut, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

These are cross motions for partial summary judgment as to liability, pursuant to Rule 56(c), on the part of the insured, Lee & Palmer, Inc. and the insurer, Employers Commercial Union Insurance Company, Inc., ("ECU"). The sole issue is whether Lee & Palmer's

risk is excluded from coverage by virtue of either the G–304 exclusion[1] or exclusion (d) of the policy. The parties agree that no issues of fact are in dispute.

## BACKGROUND

The action arises out of a series of law suits instituted by the owners of the SS Fortaleza against Lee & Palmer for its alleged negligent lashing and securing of cargo on board the Fortaleza. ECU, from whom Lee & Palmer purchased a "Comprehensive General Liability Insurance" ("Comprehensive") disclaimed coverage for liability, and refused to defend Lee & Palmer in the litigation. After proceeding to defend the actions on its own, Lee & Palmer thereafter settled the cases for $50,000. It then brought this action seeking to recover the sums paid in settlement and the attorney's fees paid in defending the Fortaleza cases.

*I. The G–304 Exclusion (Completed Operations Hazard)*

*A. Contentions*

Whether or not Lee & Palmer is covered depends on the meaning of the "Completed Operations Hazard" exclusion. A "Completed Operations Hazard" is defined by the policy as follows:

> " 'Completed Operations Hazards' includes . . . property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but

only if the . . . property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured[2] . . .". "The completed operations hazard does not include . . . property damage arising out of

(a) Operations in connection with the transportation of property, unless the . . . property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, . . .".

Lee & Palmer contends that since the property damage in the Fortaleza cases arose out of "operations in connection with the transportation of property", it is excepted from the Completed Operations Hazard exclusion, and, therefore, falls within the Comprehensive policy.[3]

ECU does not dispute the proposition that the property damage involved in the Fortaleza cases is covered under the Comprehensive policy unless it falls within one of two recognized exclusions discussed below. Nor does ECU contest that the damage arose out of "operations in connection with the transportation of property." ECU does argue, however, that the exception is inapplicable here because the property damage "arose out of a condition in or on a vehicle created by loading or unloading thereof." Stated differently, ECU's position is that the above exception to the exception applies and that, therefore, the damage falls back into the

---

1. The full title of the G–304 exclusion is "Completed Operations Hazard and Products Liability." We refer to the exclusion as "Completed Operations Hazard".

2. Both parties agree that the operations were "completed" within the meaning of the "Completed Operations Hazard".

3. "COVERAGE B—PROPERTY DAMAGE LIABILITY
   The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damags because of
   A. bodily injury or

B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

Completed Operations Hazard definition. Lee & Palmer's riposte to this is that the damages neither involve a "vehicle" nor "loading and unloading". The questions to be resolved are accordingly narrowed to whether under the terms of the policy, a vessel may be termed a "vehicle" and whether the lashing and securing of cargo may be characterized as "loading and unloading". We think the answer to both questions is no. Therefore, we find that Lee & Palmer's actions do not fall within the Completed Operations Hazard exclusion and that, unless it is excluded from coverage by exclusion (d) (See II below), the loss is covered under the policy.

### B. Discussion

The general rule in New York[4] is that where an insurance policy contains ambiguous words, such words will be construed strictly against the insurer —especially in cases of exclusion from coverage. In National Screen Service Corp. v. United States Fidelity & Guaranty Co., 364 F.2d 275 (2d Cir. 1966), the Second Circuit had occasion to review the applicable New York law on this subject:

> "In Sincoff v. Liberty Mutual Ins. Co., 11 N.Y.2d 386, 230 N.Y.S.2d 13, 183 N.E.2d 899 (1962) the New York Court of Appeals held that where there is an ambiguous word in an insurance policy, the burden which the defendant insurer must carry is to show that the construction it urges is such 'that it would be unreasonable for the average man reading the policy to conclude' that a meaning other than that urged by the insurance company was possible and 'that its own construction was the only one that fairly could be placed upon the policy.' 230 N.Y.S.2d at 16 [183 N.E.2d at 901]. Thus it would seem that in New York the insurance company can avail itself of the plain meaning rule only in those cases where 'such a definition was the *only* one that could "fairly be placed thereon"'. (Empha-

sis in original) 230 N.Y.S.2d at 15 [183 N.E.2d at 901]. (Citations omitted) The appellant [insurer] has not met that test in this case. When that condition is not satisfied the rule is that where an ambiguous word is used, 'such ambiguity should . . . [be] resolved in favor of the insured.' Sincoff v. Liberty Mutual Ins. Co., *supra,* 230 N.Y.S.2d at 16 [183 N.E. 2d at 901]; (Citations omitted) And as the New York Court noted in *Sincoff, supra,* 'this rule [of favoring the insured] has particular application where exclusions are involved.' 230 N.Y.S.2d at 16 [183 N. E.2d at 901]. (Citations omitted) The rule would seem to have special vigor when applied to a policy such as the one involved here which is by its own terms denominated a 'comprehensive general liability policy.' Cf. *Sincoff, supra,* 230 N.Y.S.2d at 16 [183 N.E.2d at 901], where it was said that 'a vague exclusion . . . should not be permitted to prevent indemnity' where the policy was of the kind denominated 'all risks' by the insurance company."

Applying these principles to the case at hand, we find that at the most it is ambiguous whether the word "vehicle" in the policy is intended to apply solely to land conveyances or whether it is intended to encompass both land and water conveyances. First, the policy itself does not define the word "vehicle". An examination of the policy does not resolve the ambiguity. We do not agree with ECU that the policy's reference (at "Definitions"—"mobile equipment") to "land vehicle" implies the possibility of the existence of "water vehicles". In fact, the word "vehicle" is never used in the policy in the context of water conveyances. Since it would do violence to the commonplace, natural meaning of the word, to classify a vessel as a "vehicle", and since the very great weight of authority appears to limit "vehicles" to conveyances on land (See 1 U.S.C. § 4

---

4. The parties agree New York Law controls.

(Def. of vehicle); 1 U.S.C. § 3 (Def. of vessel); Burford-Toothacker Tractor Co. v. Curry, 241 Ala. 350, 2 So.2d 420 (1941); People v. Curnach, 177 Misc. 606, 607, 31 N.Y.S.2d 105, 107 (County Ct.1941); Conder v. Griffith, 61 Ind. App. 218, 111 N.E. 816, 818 (1916); but see Black's Law Dictionary, 3rd Edition, p. 1802), it is clear that Lee & Palmer's construction of "vehicle" is not only a possible one but more reasonable than that proposed by ECU. *Sincoff, supra.*

Our construction of the word "vehicle" would itself render inapplicable the "unless" clause of paragraph (a). However, even if our interpretation on this point is incorrect, the clause would still be made inapplicable because, in our view, the specialized securing and lashing services performed by Lee & Palmer do not constitute loading and unloading as a matter of law.

In this connection, it is important to note that ECU does not contest as a factual matter the nature of Lee & Palmer's services. Neither ECU's 9(g) statement nor its clarifying letter of April 5, 1973, denies that Lee & Palmer was engaged solely in the business of lashing and securing; that it did not provide stevedoring services or participate in the actual transportation, placement, or carrying of the goods from various land conveyances to ships; that Lee & Palmer's services were limited to the securing and lashing of the vehicle *after* they had been placed on board by the stevedores.

ECU's only contention is that Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952) would require a holding that securing and lashing constitutes loading and unloading *as a matter of law*. In construing the term "loading and unloading" broadly, the Court of Appeals in *Wagman* stated:

" '. . . loading and unloading' embrace[s] not only the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods be-

tween the vehicle and the place from or to which they are being delivered. . . . The [broader] view impresses us as sounder, as more fully carrying out the aim of the policy—to cover the entire operation of making commercial pickups and deliveries in the business of the insured carrier . . ." at 304 N.Y. at 394, 109 N.E.2d at 594.

It is difficult to see how this definition is of any aid to ECU. Lee & Palmer's services, as stated above, are performed only *after* the stevedores have come to their final resting place. The Court of Appeals' formulation, on the other hand, defines "loading and unloading" exclusively in terms of transporting goods "between the vehicle and the place from or to which they are being delivered". Under the facts, as conceded by ECU, Lee & Palmer performed no such services.

Lee & Palmer's definition of loading —"the act of putting cargo on board"— (citing the International Maritime Dictionary (2d ed. 1961)) strikes us as being consistent with the *Wagman* definition and reasonable as applied to the maritime industry. As indicated above, since the lasher's work commences only after the cargo has been hoisted and placed on board the vessel, Lee & Palmer's services cannot be viewed as "the act of putting cargo on board". Again, Lee & Palmer has offered not only a possible construction but the more reasonable one. *Sincoff, supra,* requires that we accept it.

For the above reasons, the clause "unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof", does not bar coverage to Lee & Palmer under the Completed Operations Hazard. We now turn to exclusion (d).

*II. Exclusion (d)*

ECU argues that in the event the property damage involved in the Fortaleza cases is excepted from the Completed Operations Hazard, Lee & Palmer's claim would then fall within

exclusion (d), the so-called "watercraft exclusion", which specifies that insurance provided by the policy does not apply:

"(d). to . . . property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if the . . property damage occurs away from premises owned by, rented to, or controlled by the named insured; but this exclusion does not apply to . . property damage included within the products hazard or the completed operations hazard or resulting from operations performed for the named insured by independent contractors or to liabilities assumed by the insured under an incidental contract."

The Fifth Circuit has construed the same clause in Grigsby v. Coastal Marine Service of Texas, 412 F.2d 1011 (5th Cir. 1969). We agree with its decision that, because of the ambiguity inherent in the "watercraft exclusion", a fair construction of the exclusion is to read the main defining clause as follows: "This insurance policy does not apply . . . (d) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft *by the assured* (Lee & Palmer) . . ." (emphasis supplied). Accordingly, since we have already concluded that Lee & Palmer's services do not constitute "loading and unloading" and since there is no question that its services did not encompass the ownership, maintenance, operation or use, of the Fortaleza, exclusion (d) does not bar Lee & Palmer from coverage under the comprehensive policy.[5]

One final note. We think ECU's construction (of both the Completed Operations Hazard and exclusion (d)) of

"loading and unloading" as constituting lashing and securing is unreasonable because its interpretation would literally have deprived Lee & Palmer of all coverage on the risk central to its business which it obviously intended to secure. Where, as here, it is possible reasonably to construe the policy to avoid such a result, New York Law requires us to rule in favor of the assured. See D'Agostino Excavators Inc. v. Globe Indemnity Co., 7 A.D. 483, 184 N.Y.S.2d 378, 380–381 (1st Dept. 1959).

Lee & Palmer's motion for summary judgment on liability alone is granted. ECU's motion for summary judgment on liability is denied.

It is so ordered.

---

5. Alternatively, Lee & Palmer argues, citing Johnson v. National Union Fire Ins. Co., 56 Misc.2d 983, 289 N.Y.S.2d 852 (Sup.Ct.1968) aff'd 33 A.D.2d 924, 309 N.Y.S.2d 110 (2d Dept. 1970) and other cases, that where an endorsement, such as the G–304 confusingly combines the

Completed Operations Exclusion *and* Products Hazard Exclusion, and where the insured, such as Lee & Palmer, manufactures no product, such exclusion applies only to "products" and not services. In view of our disposition, we need not decide this question.