[Crim. No. 26769. Second Dist., Div. Three. Oct. 23, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
LAWRENCE LEE HARRIS, JR., Defendant and Respondent.

## COUNSEL

Joseph P. Busch, District Attorney, Harry B. Sondheim and Barry R. Levy, Deputy District Attorneys, for Plaintiff and Appellant.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

THE COURT.*—By information defendant was accused of the crime of vehicular manslaughter. (Pen. Code, § 192, subd. 3(a).) He pleaded not guilty. Defendant moved to set aside the information pursuant to Penal Code section 995. At the hearing on the motion it was granted and the information waš dismissed.

The People appeal from the order dismissing the information. The appeal lies. (Pen. Code, § 1238, subd. (a)(1).)

*Facts*

On May 15, 1974, Nicholas Orlandos, a reserve officer for the City of Hawthorne, was on routine patrol. At approximately 10:30 p.m. at the intersection of Broadway and Crenshaw he "observed two vehicles accelerate rapidly on a green light from Broadway going northbound" on Crenshaw. Officer Orlandos was about 50 to 75 yards behind the vehicles when he made that observation and he saw exhaust smoke pour out from behind them. The vehicle in lane number one was a yellow Pontiac Firebird and the vehicle in lane number two was a black-over-blue Dodge Charger. Officer Orlandos pursued them, but it was not until he

*Before Ford, P. J., Allport, J., and Potter, J.

reached a speed of 100 miles an hour that he began to gain on them. At approximately 116th Street he activated his red lights and siren. The Pontiac Firebird began to slow down. The Dodge Charger continued to accelerate, turned eastward on 116th Street, and "ran all stop signs on 116th."

The officer pursued the Dodge Charger eastward on 116th Street. As the Charger approached a red light at Van Ness it did not make a complete stop before it turned right. The officer temporarily lost sight of the Charger until he turned onto Van Ness; there he saw the Charger turn eastward on 116th Street, which "branches over." The pursuit continued with the Charger travelling at speeds between 65 and 90 miles per hour and failing to stop at some boulevard stops. In the course of the pursuit southbound on Western Avenue, the police vehicle was travelling approximately 65 to 75 miles per hour when the Dodge Charger pulled away from it at a speed of approximately 100 miles per hour.

As Officer Orlandos was chasing the Charger northbound on Van Ness he observed a motorcycle officer make a "U" turn on Van Ness and take up pursuit of the Charger in front of Officer Orlandos. After the motorcycle officer entered the pursuit, Officer Orlandos kept his speed down to a cautionary 65 to 75 miles per hour and continued in pursuit of the Charger. The distance was increasing between Officer Orlandos' vehicle and the Dodge Charger followed by the motorcycle officer. As Officer Orlandos continued in pursuit on Van Ness the only thing that he observed was the motorcycle officer continuing in pursuit and the visibility of taillights on the Dodge Charger.

As Officer Orlandos approached Imperial Highway he observed the Dodge Charger cross on a green light and Officer McCarroll follow through on an amber light. Officer Orlandos began to apply his brakes about one block before Imperial Highway inasmuch as he was approaching a red light. He testified that his main concern was for the "motor officer" in front of him and he did not want to stay too close because he did not want to "run over" the motor officer. Officer Orlandos further testified: "As I was approaching Imperial, I had slowed my speed down between 40 and 50 miles per hour, applying my brakes. All traffic appeared to be yielding, until the last vehicle. As I just crossed the limit lines of the intersection, a vehicle in Number 3 westbound lane pulled out in front of our vehicle . . . . A collision occurred, and we lost total contact with the pursuit at that time."

Officer Orlandos further testified that as he entered the intersection of Imperial Highway and Van Ness he was "pumping" his brakes. He was entering Imperial against a red light and his two sirens and flashing red lights were activated. He intended to cross Imperial and continue in pursuit on Van Ness if it was safe. When he observed the vehicle, driven by one Paris, pull out in front of him, Officer Orlandos hit his brakes, but was unable to avoid the collision "because of the close proximity of our vehicle and our speed." A passenger in the vehicle with which he collided died shortly thereafter as a result of the collision.[1]

Officer Orlandos travelled 4.4 miles in pursuit of the Dodge Charger. The chase came to a conclusion approximately one mile away from the intersection of Van Ness and Imperial Highway at Van Ness and Century, where the Dodge Charger abruptly braked, the driver lost control and the vehicle crashed into a red pickup truck that was parked on the street and then into a building.

Officer Richard McCarroll of the Hawthorne Police Department, assigned to traffic division motorcycles, testified that on May 15, 1974, he observed defendant's vehicle, a Dodge Charger, head westerly on El Segundo and turn northbound on Van Ness Avenue. Officer McCarroll had received information via police radio that "one of our police units was in pursuit of a Dodge Charger . . . black over a light color." The Charger was accelerating rapidly; Officer McCarroll made a "U" turn and began to chase it, activating his red lights and siren, which remained activated throughout the chase.

In the course of the pursuit Officer McCarroll reached a speed of 100 miles per hour, yet continued to fall behind the Charger. Officer McCarroll had to slow to a speed of 30 to 35 miles per hour in order to avoid collision with another vehicle. At this point the Charger, approximately a quarter mile ahead of Officer McCarroll, was going over a slight hill. Officer McCarroll testified that he was not going to continue the pursuit any further. As he came to the top of the hill he ". . . observed the vehicle and a sheriff's unit with two deputies outside of their vehicle, and the Dodge Charger that crashed into a parked car and into a building at that location just south of Century on the west side of the street." The

---

[1] It was stipulated that David Eugene Lawson, nine years of age, was a passenger in the "victim's vehicle," and was the decedent named in the complaint, and that Dr. Generoso P. Villano, medical examiner for the County of Los Angeles, performed an autopsy on the decedent and "ascribed the cause of his death to be from a contusion and edema of brain, due to or as a consequence of a blunt force trauma of the head, due to or as a consequence of other significant conditions being a contusion of the lungs."

Dodge Charger was the same vehicle he had been pursuing for almost two miles. Officer McCarroll observed defendant leaning over the trunk of the Dodge Charger; he was wearing a dark jacket and cap which appeared to Officer McCarroll to be the same clothing he had observed the driver of the Dodge Charger wearing.

On May 15, 1974, between 10:30 and 10:45 p.m., Deputy Louis Medina of the Los Angeles County Sheriffs' Department, assigned to special enforcement bureau patrol division, was in the vicinity of Century and Van Ness when he received a "radio broadcast of the Hawthorne Police Department pursuit." Deputy Medina drove to Van Ness and Century, turned southbound on Van Ness, at which time he observed a Dodge Charger travelling on Van Ness in excess of approximately 80 to 90 miles per hour. He further testified: "I had my red lights on in the radio car, and the Dodge Charger, all of a sudden, applied its brakes, stopped abruptly . . . . It braked abruptly and lost control, crashed into a red pickup truck that was on the west side of the street, parked. It struck the pickup truck and proceeded and struck a building, also, on the west side of the street, and came to a halt." Deputy Medina approached the Charger and found defendant slumped over the driver's wheel.

At the conclusion of the preliminary hearing the magistrate stated: "The record will show that we have discussed it off the record as to the legal points involved, and particularly as to proximate cause and foreseeability and the other complicated involved issues; however, I do feel that there is a strong suspicion that the crime of vehicle manslaughter has been committed, and there is the unlawful killing of a human being in the driving of a vehicle with gross negligence in. an act inherently dangerous to human safety. Some of the speeds exhibited would indicate that the real question is whether this death, which is quite apparent—the evidence shows a collision between an officer pursuing the defendant to some extent, and whether this is all arguably not proximately resulting from the defendant's driving of the motor vehicle, I believe under the circumstances, from the evidence that I have heard, that I have heard a sufficient amount to hold him, and I do so hold that the crime of vehicle manslaughter has been committed, and that there is sufficient and probable cause to believe that Lawrence Lee Harris is guilty thereof. I am going to hold him to answer, and it does appear that the offense in the within Complaint mentioned, to wit, a violation of Section 192 subdivision 3(a) of the Penal Code, the same being the crime of manslaughter, vehicle manslaughter, has been committed, and there is

sufficient and probable cause to believe that the defendant, Lawrence Lee Harris, Jr., is guilty thereof."

The trial court granted defendant's motion to set aside the information. (Pen. Code, § 995.) The record of the hearing of the motion indicates that the court believed that the evidence set forth in the preliminary hearing transcript showed that Officer Orlandos had "relinquished the chase to . . . some other officer that had taken up pursuit and was merely proceeding to back up that officer." In granting defense counsel's motion the trial court accepted defense counsel's argument that defendant's conduct was not the proximate cause of decedent's death.

The People contend that the trial court erred in granting defendant's motion made pursuant to Penal Code section 995.

### Discussion

"Under Penal Code section 995, an information must be set aside if the defendant has been committed without 'reasonable or probable cause.' Of course, the probable cause test is not identical with the test which controls a jury . . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, 'Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]' [Citation.]" (*Taylor* v. *Superior Court,* 3 Cal.3d 578, 581-582 [91 Cal.Rptr. 275, 477 P.2d 131].)

" 'It is axiomatic that in considering the propriety of a motion to set aside an information pursuant to section 995 of the Penal Code, the reviewing court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. And if there is some evidence in support of the information, the court will not inquire into the sufficiency thereof.' (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283 . . . .) Moreover, ' "[t]he credibility of witnesses at the preliminary examination . . . is a question of fact within the province of the committing magistrate

to determine, and neither the superior court nor an appellate court may substitute its judgment as to such question for that of the magistrate." ' (*Jones* v. *Superior Court,* 4 Cal.3d 660, 667 . . . .)" (*People* v. *Block,* 6 Cal.3d 239, 245 [103 Cal.Rptr. 281, 499 P.2d 961]; see also *People* v. *Topp,* 40 Cal.App.3d 372, 375 [114 Cal.Rptr. 856].)

It is therefore necessary to determine whether the evidence introduced at the preliminary hearing was sufficient to show that there was some rational ground for assuming the possibility that an offense had been committed and the accused was guilty of it.

The information charged defendant with the crime of vehicular manslaughter under Penal Code section 192, subdivision 3(a), which provides: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds: . . . 3. In the driving of a vehicle—(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence. . . . [¶] This section shall not be construed as making any homicide in the driving of a vehicle punishable which is not a proximate result of the commission of an unlawful act, not amounting to felony, or of the commission of a lawful act which might produce death, in an unlawful manner." ▮ This provision requires that the death, and not merely the accident itself, must be the proximate result of the commission of the unlawful act. (*People* v. *Tracy,* 199 Cal.App.2d 163, 169 [18 Cal.Rptr. 487].)

Although defendant's own unlawful act must be a proximate cause of the death, negligence on the part of the victim is not a defense to criminal liability. (Witkin, Cal. Crimes, §§ 347, 252; *People* v. *Tracy, supra,* 199 Cal.App.2d at p. 168.) Moreover, defendant's conduct can be a proximate cause of a death even where death results from collision with a third vehicle. (See *People* v. *Kemp,* 150 Cal.App.2d 654, 659 [310 P.2d 680];[2] *Tischoff* v. *Wolfchief,* 16 Cal.App.3d 703, 706-707 [94 Cal.Rptr.

---

[2]In cases such as *Kemp* where two drivers are racing each other and one of the vehicles collides with a third vehicle, causing death, the culpability of the other driver is clear because each of the two drivers was inciting and encouraging the other to do an unlawful act. (*People* v. *Kemp, supra,* 150 Cal.App.2d 654, 659; see Annot., 24 A.L.R.3d 1286.) While in the case presently before this court it cannot be said that defendant and a pursuing officer were acting in concert, it is manifest that defendant could reasonably foresee that his conduct would provoke pursuit by an officer in the performance of his duty (see *People* v. *Antick,* 15 Cal.3d 79, 87-88 [123 Cal.Rptr. 475, 539 P.2d 43]) and that it was probable that his conduct of fleeing from the officer at great speeds along city streets would result in a collision, either of his vehicle or that of the officer, with a

299].) ██ The determination of whether defendant's unlawful act or acts were a proximate cause of the death is a question for resolution by the trier of fact (see *People* v. *Lewis,* 152 Cal.App.2d 824, 828-829 [313 P.2d 972]) and is determined according to the ordinary principles governing proximate causation. (Witkin, Cal. Crimes, *supra,* § 347; CALJIC No. 8.93.[3])

██ A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve defendant of liability. (Witkin, Cal. Crimes, *supra,* §§ 80, 82, 83.) "(1) The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. (2) The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act." (Witkin, Cal. Crimes, *supra,* § 84.)

██ The evidence adduced at the preliminary hearing indicates that defendant initiated an unlawful and reckless course of speed on public streets and then continued it for 4.4 miles in an effort to evade law enforcement officers who, using emergency sirens and red lights, tried to apprehend him. Toward the end of the high speed chase a third law enforcement unit was involved in apprehending defendant. His speed at times exceeded 100 miles per hour. It was reasonably foreseeable that the officers would continue to chase him as he speeded recklessly and circuitously over public thoroughfares and failed to stop at boulevard stops, thus setting in motion circumstances creating peril to others on the public streets and a high probability that collisions, injuries and deaths would occur in the course of the chase.

The record indicates, contrary to defense counsel's assertion at the hearing on the section 995 motion, that there was at least a question of

pedestrian or a third vehicle. Such conduct constitutes the commission of an unlawful act not amounting to felony with gross negligence within the meaning of Penal Code section 192, subdivision 3(a). Upon proof at trial that the death was a proximate result of such unlawful conduct, criminal culpability attaches. (See fn. 4, *infra.*)

[3]CALJIC No. 8.93 states: "The proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred. [¶] There may be more than one proximate cause of death. When the conduct of two or more persons contributes concurrently as proximate causes of a death, the conduct of each of said persons is a proximate cause of the death regardless of the extent to which each contributes to the death. A cause is concurrent if it was operative at the moment of death and acted with another cause to produce the death."

fact as to whether Officer Orlandos was still in pursuit of defendant at the time of Officer Orlandos' collision which resulted in decedent's death. ██ ██▐██ Under these circumstances the magistrate was justified in determining that the evidence was sufficient to show that the collision between Officer Orlandos' vehicle and that in which the decedent was riding was not an independent intervening cause of the death.[4] (Cf. *Taylor* v. *Superior Court, supra,* 3 Cal.3d at pp. 582-583.) ██ We conclude that the evidence supported the magistrate's determination that reasonable and probable cause existed to charge defendant with vehicular manslaughter.

The order setting aside the information is reversed.

---

[4]Whether Officer Orlandos' conduct was so remote or disconnected and unforeseeable as to be a superseding cause, in which case defendant's conduct would not be the proximate cause of decedent's death, is a question of fact to be determined by the trier of fact beyond a reasonable doubt. Even if the trial court believed that the burden of proof could not be met and an acquittal would result, it was incumbent upon it to uphold the magistrate's determination if there was sufficient evidence to support it. (See *People* v. *Tracy, supra,* 199 Cal.App.2d at pp. 168-169.)