Filed 1/19/21  P. v. Levi CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFFREY BRIAN LEVI,<br><br>    Defendant and Appellant. | D076803<br><br><br>(Super. Ct. No. SCD275118) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed in part, reversed in part, and remanded.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Kathryn Kirschbaum and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

On a January evening near midnight, defendant Jeffrey Brian Levi flirted with death when he barreled down an interstate freeway at nearly 120 miles per hour while intoxicated.  He lived, but two other young men did not.  We uphold a jury's finding that Levi caused the victim's deaths by disabling

their car moments before a third driver—an off-duty police officer—fatally collided with it.

## FACTUAL AND PROCEDURAL BACKGROUND

When Levi parted from his friend after a movie and dinner, he had already consumed two drinks. At that point, he might have still been able to drive his red Ford Mustang home safely. But he went to a bar instead, where he had six more pours. He left close to midnight and drove himself—a disastrous decision made worse by his excessive speed, which reached 120 miles per hour on the freeway. After cutting across several lanes of traffic and narrowly avoiding one car, Levi rammed into another, causing both vehicles to spin. The impact propelled Levi's Mustang into a ditch while the Toyota Corolla he hit came to rest across two lanes of the freeway. Cars swerved to avoid the disabled vehicle, and for a moment, the three people inside the Corolla were shocked but apparently unhurt. Giovanna Dominguez was sitting in the back seat of the car with her boyfriend, Isaac Felix, while her brother, Jesus Dominguez, was driving. Jesus tried to move the car after the collision, but it would not start up again. He turned on the hazard lights, but it is unclear if they were operational.

Within just a few minutes, the Corolla was hit again. R. Rowe, an off-duty police officer, was driving home from his evening shift in a Ford Explorer police cruiser. He did not see the disabled Toyota because he was looking in his rearview mirror. Given his work in the gang unit, Rowe was in the habit of checking the mirror often to make sure he was not being followed, especially after he left the office. After it hit the Corolla, Rowe's Explorer rolled and the smaller car went up in flames. Giovanna, the only Corolla occupant who had unbuckled after the first crash, was able to crawl

2

out and escape.  Both Jesus and Isaac died in the fire.  Rowe was injured, but not critically so.

Levi walked away from the first crash.  He proceeded up a nearby offramp and down the street.  When he was located by officers and asked what happened on the freeway, he responded, "It was bad."  Almost three hours later, he took two breath tests that recorded his blood alcohol concentration at .163 and .171 percent.  A subsequent blood draw returned a result of .17 percent.

Levi was charged by the San Diego District Attorney with murder (Pen. Code, § 187, subd. (a); counts 1 & 2), gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a); counts 3 & 4), driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 5), driving with a measurable blood alcohol causing injury (Veh. Code, § 23153, subd. (b); count 6) and hit and run with death or permanent serious injury (Veh. Code, § 20001, subd. (b)(2); count 7). Some allegations reflecting the severity of his conduct were also alleged.

The case went to trial, where Levi denied he was criminally responsible for any of the injuries that resulted from the second collision—including Jesus and Isaac's deaths—by arguing that Rowe's distracted driving was the true cause.  He also disputed the People's contention that murder charges were merited under a theory of implied malice because he had previously been convicted of driving under the influence and was advised of the consequences if he repeated this mistake.  The jury found Levi guilty on all counts and found the allegations true.

## DISCUSSION

On appeal, Levi argues (1) there was insufficient evidence that he was the legal cause of the deaths and injuries suffered by the victims, (2) the trial court prejudicially erred by refusing defense counsel's proposed pinpoint instruction, (3) his convictions for counts 5 and 6 should be overturned because they are lesser included crimes within counts 3 and 4, and (4) the Supreme Court should reconsider two of its holdings that, taken together, exposed Levi to increased criminal liability for his conduct.

We largely disagree with Levi's assessment of his case, finding plentiful evidence to support a finding by a reasonable jury beyond a reasonable doubt that Levi caused *both* crashes and is legally responsible for the ensuing harms. Under the law that governs causation, his liability would only be limited if a fatal crash was not a foreseeable result of his actions. The evidence here indicates it was. Even the specific possibility that a distracted motorist would compound the harm caused by an intoxicated driver is well within the foreseeable realm.

As to the trial court's rejection of Levi's pinpoint instruction, there was no error; the proposed instruction was duplicative of other instructions given and was properly the subject of closing argument. Levi prevails, however, as to his third argument. Counts 5 and 6 are lesser included offenses within the two counts of gross vehicular manslaughter and, as such, Levi cannot be convicted of all four offenses for the same criminal conduct. We accordingly reverse his convictions on counts 5 and 6. Levi's final argument is raised to preserve his opportunity to ask the Supreme Court to reconsider two of its holdings. As he acknowledges, we are bound to follow binding Supreme Court precedent.

4

1. *Causation*

We consider Levi's challenge with due regard for the proceedings in the trial court, reading the record in the light most favorable to the judgment and disturbing the result only if no reasonable jury could have concluded he caused the deaths and injuries of the victims. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Cervantes* (2001) 26 Cal.4th 860, 866.) Our inquiry is governed by the ordinary principles of causation (*People v. Armitage* (1987) 194 Cal.App.3d 405, 420 (*Armitage*)), which is a factual question for the jury. (*People v. Harris* (1975) 52 Cal.App.3d 419, 427 (*Harris*)). Legally sufficient cause is generally referred to as proximate cause, though it need not be the singular or immediate reason for an injury. (2 Witkin & Epstein, Cal. Crim. Law (4th ed. 2020) Elements, § 37; see also CALCRIM No. 620.) The injury must, however, flow directly from the "natural and probable consequence of the defendant's act" for criminal liability to attach. (*People v. Roberts* (1992) 2 Cal.4th 271, 318 & 319.)

In the case before us, it cannot be reasonably disputed that both crashes flowed directly from Levi's actions. His car collided with the Corolla, disabling it in the middle of a freeway. Within minutes, Rowe's car struck it again, sparking a lethal fire. The only remaining question is whether this chain of events was a natural and probable consequence of Levi's initial criminal act.

In evaluating a causal chain, two questions help courts decide if there were multiple legal causes of the ultimate injury: whether the defendant's act was a " 'substantial factor' " contributing to the result (*People v. Caldwell* (1984) 36 Cal.3d 210, 220 (*Caldwell*); *People v. Scola* (1976) 56 Cal.App.3d 723, 726), and whether the intervening cause was a "normal and reasonably foreseeable result of defendant's original act." (*Harris*, *supra*, 52 Cal.App.3d

5

at p. 427.) In the end, these are simply two vantage points from which courts evaluate whether it is fair to hold a defendant responsible. The substantial factor inquiry shields defendants whose contribution to a harm was " 'so infinitesimal or so theoretical' " that the injury truly hinged on something else. (*Caldwell, supra,* at p. 220.) The foreseeability inquiry helps courts distinguish between dangerous situations of a defendant's own creation, and freak occurrences or opportunistic bad actors.

It is important to note that foreseeability does not mean an intervening event was *likely* to occur, or that the details of how it happened could be readily predicted; rather, " 'it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act.' " (*Harris, supra*, 52 Cal.App.3d at p. 427.) When an intervening cause of injury was foreseeable, that cause is termed "dependent" on the defendant's act and the defendant remains liable. Conversely, if the event is extraordinary or abnormal, it is deemed a " 'superseding' " cause and the defendant will not be held responsible. (*People v. Funes* (1994) 23 Cal.App.4th 1506, 1523.) But superseding causes come along rarely. "The second act will break the chain of causation only where, under no rational interpretation of the evidence, could the later act of negligence have been reasonably foreseen." (*Jones v. City of South San Francisco* (1950) 96 Cal.App.2d 427, 435.)

Levi argues that Rowe's actions were just such a rare occurrence, framing his inattentive driving as an extraordinary event of "intervening negligence." He focuses on the indicators that Rowe was distracted, citing the other cars that successfully maneuvered around the Corolla, debris near the accident, and Rowe's own testimony that he was glancing in his rearview mirror at precisely the wrong moment. But in doing so, Levi obscures the

6

only analysis that matters:  Was it reasonably foreseeable that his driving under the influence of alcohol could cause a fatal crash through a quick series of accidents?  In more granular terms, was it reasonably foreseeable that dangerous conditions on a freeway created by an intoxicated driver—such as a disabled vehicle—might be compounded by a distracted one?  Both common sense and a review of case authority indicate that the answer to these questions is yes.

Our research returned no criminal caselaw with precisely parallel facts, but is replete with examples of defendants who were held legally responsible for deaths that were even less directly tied to the defendant's actions.  And an intervening act of negligence, whether by the victim or a third party, does not break the causal chain when it remains foreseeable.  (*People v. Autry* (1995) 37 Cal.App.4th 351, 360.)

The general principles were articulated and applied by the Supreme Court in *Caldwell, supra,* 36 Cal.3d 210.  There, the Supreme Court determined that two defendants proximately caused the death of their co-felon, who was shot by a deputy, because they led deputies on a car chase and then initiated a shootout.  Although the co-felon exacerbated the risk by waving a gun at deputies and refusing to drop it, his contributory actions did not absolve the defendants of concurrent criminal responsibility for his death. (*Id.* at pp. 219–221.)

Several criminal cases have applied these causation principles to fact patterns involving intoxicated drivers.  In *Armitage, supra,* 194 Cal.App.3d at pages 420 to 421, an intoxicated defendant flipped his motorboat and was deemed responsible for the death of his passenger, who tried to swim to shore.  The appellate court rejected the argument that the victim's decision was a superseding event; as the court reasoned, the defendant "placed the

7

inebriated victim in peril," and as such "cannot obtain exoneration by claiming the victim should have reacted differently or more prudently." In *People v. Marlin* (2004) 124 Cal.App.4th 559, 570, the defendant, who collided with another car while driving under the influence of alcohol, was criminally liable for the victim's injuries despite the potential that she might have been drinking as well.  Finally, in *Dahlberg v. Sandor* (E.D.Cal., Nov. 1, 2011, No. 1:11-cv-00967-LJO-DLB (HC)) 2011 U.S.Dist.Lexis 126244, the defendant drove while intoxicated and parked his van perpendicularly across a rural road before he fell asleep.  A deputy sheriff was hit by another motorist after he stopped to check on the van.  Although the deputy contributed to his own injury by blinding oncoming drivers with the position of his spotlight, his negligence did not break the causal chain because it was "fully predictable" that the defendant could cause an accident by parking in the middle of a road.[1]  (*Dahlberg,* at pp. *23–*26.)

In a stranger turn of events, a defendant who started a forest fire was responsible for a fatal collision between two firefighting planes.  (*People v.*

---

[1]    In a handful of other cases, defendants led law enforcement officers on high-speed chases that resulted in fatal collisions in which the defendant's car was not directly involved.  Appellate courts have consistently affirmed findings that the defendant proximately caused the resulting deaths and reversed conclusions to the contrary.  (*People v. Schmies* (1996) 44 Cal.App.4th 38, 58; *People v. Pike* (1988) 197 Cal.App.3d 732, 749–750 [Defendant's "persistent attempt to escape brought about just what would be expected:  pursuit by more officers . . . .  The probability that this might result in . . . officers losing control and/or colliding with another vehicle or some object is sufficient to establish that defendant's conduct was a cause"]; *Harris, supra,* 52 Cal.App.3d at p. 427 ["It was reasonably foreseeable that the officers would continue to chase him as he speeded recklessly . . . setting in motion circumstances creating peril to others on the public streets and a high probability that collisions, injuries and deaths would occur in the course of the chase."].)

*Brady* (2005) 129 Cal.App.4th 1314, 1334.) In reaching this conclusion, the appellate court affirmed the trial court's decision to exclude evidence that one of the pilots had been drinking, since the only relevant consideration was the foreseeability that "aircraft would be summoned to extinguish the fire and that a fatal collision might result"—not that a pilot's negligence could contribute to the chance of a collision. (*Ibid*.) The parallel to our case is apparent on this point—Rowe's possible contributions to the accident are insignificant. The critical fact is that Levi's actions disabled the Corolla and substantially increased the risk to the occupants of that vehicle. Whether the Corolla was then hit by a negligent or nonnegligent driver is irrelevant because it is fully foreseeable that a disabled vehicle in the middle of a freeway might be hit by someone.

Given the apparent lack of criminal cases with identical facts, we turn to civil personal injury cases, which employ similar principles of causation. Though separated from this case by nearly a century, *Hill v. Peres* (1934) 136 Cal.App. 132 provides a helpful analog. Peres drove his car recklessly and crashed into the Hill family automobile, throwing Johanna Hill from the car and rendering her unconscious. Fifteen minutes later, a man named Brooder drove by and hit the now-disabled Peres car, causing it to crush Johanna. (*Id*. at pp. 135–137.) Both Peres and Brooder were found liable for her death, and the appellate court affirmed. It noted that although Johanna was alive after the first collision, Peres was not relieved of liability for her death due to Brooder's intervention because the second collision could be reasonably anticipated. (*Id*. at pp. 138–140.)

Similarly, nothing absolves Levi of his criminal liability because the second, fatal crash was a foreseeable consequence of his criminal act of driving under the influence of alcohol. We have little trouble upholding the

9

jury's finding on this point. The risk of multiple crashes in these circumstances—as a result of a distracted driver or otherwise—is obvious. It is eminently foreseeable that someone who drives while intoxicated could precipitate a series of collisions, and that danger is compounded by the possibility that other drivers might be distracted. It would, in fact, be strange to presume that every driver is a paragon of vigilance. *That* would be an extraordinary occurrence. A distracted driver is not. (See *Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359, 367–373 [negligence and even intoxication of oncoming drivers is "not uncommon" and therefore a foreseeable risk in any roadway activity].)

On the record before us, there is more than substantial evidence to support a finding that Levi's intoxicated driving caused the victims' injuries in this case.

2. *Pinpoint Instruction*

Levi next challenges the trial court's rejection of a proposed pinpoint instruction submitted by his counsel. He claims the court prejudicially erred by failing to give the instruction. A trial court may refuse an instruction if it improperly states the law or is argumentative, duplicative or confusing. (*People v. Moon* (2005) 37 Cal.4th 1, 30.) Although we review such a decision independently (*People v. Waidla* (2000) 22 Cal.4th 690, 733), our analysis follows the same rationale used by the trial court.

Counsel's proposed instruction highlighted the different states of mind required for finding gross negligence and implied malice, the latter being

10

necessary to find the defendant guilty of second degree murder.[2]  But as the trial court noted, it was duplicative of the explanation the jury would already receive in the well written standard instructions.  (CALCRIM Nos. 520 and 590.)[3]  Apart from framing the two standards as a comparison, the pinpoint instruction offered nothing new.  We also agree with the trial court's

_____

[2]    The proposed instruction reads as follows:
    "Distinctions:  [CALCRIM Nos.] 520 & 590
    "In attempting to distinguish between the terms *gross negligence* and *implied malice,* an objective-subjective test is used.  A finding of gross negligence is made by applying an objective test: if a reasonable person in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness.  However, a finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard.
    "Implied Malice contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence.
    "The distinction between *conscious disregard for life* and *conscious indifference to the consequences* is subtle.  Phrased in everyday language, the state of mind of a person who acts with conscious disregard for life is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.'  The state of mind of the person who acts with conscious indifferences to the consequences is simply, 'I don't care what happens.' "

[3]    CALCRIM No. 520 explains that "[T]he defendant had *implied malice* if:  1.  He intentionally committed the act; 2.  The natural and probable consequences of the act were dangerous to human life; 3.  At the time he acted, he knew his act was dangerous to human life; AND 4.  He deliberately acted with conscious disregard for human life."
    CALCRIM No. 590 details that "A person acts with gross negligence when:  1.  He or she acts in a reckless way that creates a high risk of death or great bodily injury; AND 2.  A reasonable person would have known that acting in that way would create such a risk."
    It is clear from these instructions that implied malice includes a subjective element—that the defendant was actually aware his act posed a danger to human life—whereas no such requirement exists for gross negligence.

11

assessment that some of the proposed language—particularly counsel's attempts to illustrate the different states of mind with everyday language—belonged in her closing argument. The instruction was thus duplicative and argumentative, and it was not error to refuse it.

3.     *Lesser Included Offenses*

California law "prohibits multiple convictions based on necessarily included offenses." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) Levi contends—and the People concede—that his convictions on counts 5 and 6 (for alcohol-related driving offenses under Vehicle Code section 23153, subdivisions (a) and (b)) are lesser included offenses of his convictions on counts 3 and 4 (for gross vehicular manslaughter while intoxicated under Penal Code section 191.5, subdivision (a)).

For reasons already expressed by other courts of appeal, we are in agreement with the parties. (*People v. Miranda* (1994) 21 Cal.App.4th 1464, 1468 [holding Vehicle Code section 23153, subdivision (a) is a lesser included offense within Penal Code section 191.5, subdivision (a)]; *People v. Binkerd* (2007) 155 Cal.App.4th 1143, 1149 [concluding any violation of Vehicle Code sections 23140, 23152, or 23153 resulting in a victim fatality is a lesser included offense of simple vehicular manslaughter].) Consequently, it is not sufficient that Levi's convictions on counts 5 and 6 were stayed; they must be reversed.

4.     *The* Watson *and* Sanchez *Decisions*

Finally, Levi takes issue with two Supreme Court decisions that expose him to a high degree of criminal liability for his actions—*People v. Watson* (1981) 30 Cal.3d 290 and *People v. Sanchez* (2001) 24 Cal.4th 983. *Watson* held second degree murder charges are not precluded in vehicular homicide cases, while *Sanchez* held gross vehicular manslaughter is not a lesser

12

included offense within murder. Levi contends these cases were incorrectly decided, and suggests each should be revisited.

As Levi concedes, this court is bound to follow binding Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Respecting our role as an intermediate appellate court, we decline Levi's invitation to comment any further.

DISPOSITION

The defendant's convictions for driving under the influence of alcohol causing injury (count 5) and driving with a measurable blood alcohol causing injury (count 6) are reversed. The trial court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

GUERRERO, J.

13