Filed 7/1/21  P. v. Trombini CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073991 |
| v. | (Super.Ct.No. INF1600301) |
| EMANUELE TROMBINI, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy J. Hollenhorst, Judge.  Affirmed as modified.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

While driving from a speed of 107, and coasting to 89 miles per hour, defendant Emanuele Trombini rear-ended a vehicle that had just entered the roadway from a driveway, killing the driver of that vehicle and injuring the passengers of both cars. He was charged with murder (Pen. Code, § 187, subd. (a)) based on his past history of speed-related violations and ingestion of three times the therapeutic dosage of Xanax and use of marijuana throughout the day, and two counts of felony driving under the influence of drugs and causing bodily injury with enhancement allegations of causing great bodily injury. (Veh. Code, § 23153, subd. (e).) Following jury trials,[1] defendant was convicted on all counts, and he was sentenced to an aggregate term of six years, with a consecutive indeterminate term of 15 years to life. He appeals.

On appeal, defendant argues the trial court erred by (1) excluding defense evidence that the decedent's driving violated the Vehicle Code, (2) refusing to instruct the jury on the Vehicle Code sections violated by the decedent, (3) failing to instruct the jury on vehicular manslaughter as a lesser included offense of murder, (4) refusing to instruct on vehicular manslaughter as a lesser related offense of murder, (5) the

---

[1] The first trial, resulting in the convictions for driving under the influence of drugs, ended in a mistrial as to the murder count. Following retrial on that count, defendant was convicted of murder.

2

cumulative effect of these errors, and (6) separate convictions for driving under the influence are unlawful. We modify and affirm.

## BACKGROUND

On February 24, 2016, defendant headed out on State Route 111 with his girlfriend, Samantha Varner, after smoking several bowls of marijuana during the day and consuming three times the therapeutic dose of Xanax, for which he did not have a prescription. As he entered Cathedral City, his speed reached up to 107 miles per hour as he argued with his girlfriend over a lighter that was not where he thought it should be.

While driving, he changed lanes without signaling on several occasions, nearly sideswiping two other vehicles traveling in the same direction. He also hit the center median more than once. At traffic signals, he had to stop abruptly to avoid rear-ending the car in front of him, and he did not promptly respond when the light changed.

In Cathedral City, while defendant was speeding down the highway, which became East Palm Canyon, Caryn Clemente and her son were pulling out of the Del Taco parking lot in a Toyota Camry. Peter, the passenger and son of Caryn Clemente, looked to the left as his mother looked both ways. The Camry entered the number two lane first, at 3.7 miles per hour, and accelerated as she changed to the number one lane. Moments later, the Camry was struck from behind by the defendant's BMW, scattering debris over a wide field.

Information downloaded from the two vehicles indicated that at the time of the accident, the Toyota was traveling at 6.2 miles per hour. At the point where the Toyota

3

entered the roadway, defendant was approximately 667 feet away. From this distance, a driver would feel safe entering the roadway.

Five seconds before impact, defendant was driving at 107 miles per hour, 745.4 feet from the point of impact. Because of a dip in the road, defendant's headlights might not have been visible until after it crested the rise in the road. The dip in the road also would have prevented the defendant from seeing the Camry. At a point 4.5 seconds prior to impact, when the Camry began to enter the roadway, the BMW was 667 feet away.

At the actual time of impact, defendant's vehicle was traveling at a speed of approximately 90 miles per hour in a 40 mph zone.[2] If defendant had been driving the speed limit, the BMW would have still been 451 feet away from the victim's Camry when it entered the number one lane of the roadway.

Two drivers were nearly sideswiped by the defendant's BMW as it sped down Highway 111 as it entered Cathedral City, driving erratically. One of the drivers, James B., who had nearly been sideswiped by defendant just seconds before the collision, was in the process of calling 9-1-1 when he saw the smoke from the collision ahead of him. After reporting the collision, he stopped at the scene, saw that defendant was alert, and then checked the occupants of the Camry.

---

[2] The data was obtained using Crash Data Retrieval (CDR), the primary means of retrieving data from the Airbag Control Module (ACM), which records deployment and non-deployment events, and collision events. The ACM monitors systems and measures acceleration. The defendant's accident reconstructionist estimated defendant's speed at point of impact to have been approximately 82 miles per hour, because he disagreed with the data retrieved from the BMW, even though that data was consistent with speed reflected on the speedometer of the BMW.

Brian B., another driver who was traveling along Highway 111 as it enters Cathedral City on the way to Palm Springs, also had a close encounter with defendant's BMW. Brian was a traveling X-ray technician on his way home from work. As the highway turned into East Palm Canyon Drive, he was stopped at a traffic signal when he saw the BMW behind him, as it slammed on its brakes after nearly striking Brian from behind.

At the next traffic signal, as Brian was telling his wife on the phone about the BMW's erratic driving, defendant lurched into the intersection and nearly struck the center divider, swerved back into the lane, and then "gunned it." Brian hung up the call with his wife and was ready to call 9-1-1 when he saw a cloud of smoke and realized there had been a collision. He, too, stopped at the scene and, along with the proprietor of the smoke shop located next door to the Del Taco, who had witnessed the collision from the parking lot in front of the shop, extricated Peter Clemente from the vehicle and escorted him to the curb.

As Peter was being led away from the vehicle, Brian leaned into the Camry to check on Caryn Clemente, who had a slight pulse at first. However, by the time they tried to remove Caryn from the vehicle, she had already expired.

By this time, police and paramedics were arriving at the scene and Sergeant Chapman attended to Caryn. Because the driver door would not open, the officer had to climb in through the passenger door to extricate her, but she was not breathing. He turned off the ignition as a safety measure due to the presence of fuel under the vehicle,

5

and cut her seatbelt. He and another person gently pulled her out through the passenger side, and carried her to the center median. By this time, paramedics had arrived, at which time Caryn was pronounced dead at the collision scene.

Caryn's death was attributed to blunt impact injuries due to the traffic collision. There was hemorrhaging in both the scalp area and the area overlying the brain itself. Her brain was partially torn from the brain stem and the ligaments and membranes of the first cervical vertebrae were loose and bloody. Peter suffered a serious head injury with epidural hematoma requiring a craniotomy. Samantha Varner, defendant's then girlfriend and passenger in the BMW was also injured in the collision, suffering fractures to her collar bone and a ribs, in addition to an abrasion from the seatbelt. Two years after the collision, her full strength still had not returned and she suffered from anxiety.

Defendant, who suffered a facial injury, was found to have marijuana and Xanax in his blood.[3] The amount of Delta-9 THC (the active ingredient in marijuana) was consistent with recent use. The amount of Xanax, a benzodiazepine, detected in defendant's blood was more than three times the therapeutic dosage. The toxicologist, testifying as an expert, expressed the opinion that the combined effect of marijuana and Xanax can cause driving impairment. Defendant's driving pattern in the moments leading up to the collision, and the results of the toxicology testing, led the toxicologist to the opinion that defendant's driving was impaired.

---

[3] Morphine was also detected in his blood, but this was probably administered in the hospital.

At the hospital, defendant was interviewed and initially told the officers that had not smoked marijuana that day or taken any drugs, and that he was traveling at the speed limit when the Toyota came out from nowhere. After being informed that Samantha had told the officers they had smoked pot and that he was going faster than the speed limit, defendant admitted to having smoked marijuana, but denied that it affected him because he used it daily. He denied going 80 miles per hour as Samantha had estimated, saying he usually cruised at 60 miles per hour on that road. However, he eventually admitted he had smoked weed and ingested Xanax, which he obtained from a friend, that day.

Defendant was charged with one count of murder (count 1, Pen. Code, § 187, subd. (a)), and two counts of driving under the influence of drugs causing bodily injury (counts 2, 3, Veh. Code., former § 23153, subd. (e)[4]). At trial, Investigator Snider, the prosecution's accident reconstruction expert, offered an opinion as to the factors involved in the collision based on information downloaded from the ACM, using CDR software. He examined both vehicles, as well as the crime scene photographs and the crime scene itself; he also watched surveillance video showing the collision from various aspects. The ACM monitors a vehicle's systems and measures acceleration, while also recording nondeployment events, that is, shocks big enough to "wake up" the system, but not enough to deploy the airbags.

---

[4] Vehicle Code section 23153 was amended in 2016 and former subdivision (e) is now subdivision (f), effective July 1, 2018. (Stats. 2016, ch. 765, § 2 (AB 2687), effective January 1, 2017.)

7

The information from the BMW showed that five seconds before the collision, the vehicle was traveling at a speed of 107 miles per hour, but that there was no acceleration at that point. The speed decreased in the absence of acceleration and was measured by the ACM at 0.5 second intervals. At 4.5 seconds prior to impact, the car had coasted to 106 miles per hour, and continued in this pattern, with no acceleration or braking applied, until the point of impact, at which time the vehicle was traveling at 89 miles per hour.

The Toyota Camry was shown to be driving at a speed of 3.7 miles per hour as the victim exited the parking lot and entered the roadway. From that point to the point of impact, the victim's speed increased to 6.2 miles per hour. When the Toyota Camry entered the roadway, defendant's BMW was 667 feet away. From this distance, a driver entering traffic would feel safe. If defendant had been driving at the speed limit, he would have still been 451 feet away from the Camry when the latter entered the number one lane of the roadway.

Defendant presented his own accident reconstruction expert who disagreed with the data downloaded from the ACM, although he agreed that 107 miles per hour was within the range of possible speeds driven by defendant at the point five seconds before the collision. Instead, his opinion was that defendant was actually driving only 100 miles per hour at that point. Additionally, he disagreed that defendant's speed at the time of impact was 89 miles per hour, instead estimating it was only 82 miles per hour. He agreed it was unsafe to drive more than two-and-a-half times the speed limit, and he acknowledged that the speed limit recorded by the ACM reflects the speed shown on the

8

speedometer, but he did not consider the defendant's impairment as a factor, it was his opinion that the Toyota was the significant cause of the collision by violating the defendant's right of way.

The jury convicted defendant of counts 2 and 3 in the first trial, along with the enhancements for causing great bodily injury (Pen. Code, § 12022.7, subd. (a)), but the jury hung on the murder count, resulting in a mistrial as to that count.

Following retrial on count 1, defendant was convicted of murder. He was sentenced to an aggregate determinate term of 6 years in prison for count 2 and 3 (upper term of 3 years for count 2, plus 3 years for the great bodily injury enhancement, and stayed terms for count 3 and its enhancement), with a consecutive term of 15 years to life for the murder in count 1.

Defendant appealed.

## DISCUSSION

1.    *The Trial Court Properly Excluded Evidence, Consisting of Legal Conclusions, that the Decedent Committed Driving Infractions.*

Throughout the trial, defendant made it clear he wanted the jury to consider whether the fatal collision was caused by the victim's own driving, arguing that she entered the roadway from the Del Taco parking lot too slowly and she immediately changed from the number two lane to the number one lane. The defense theory was that her failure to yield when exiting the parking lot, driving too slowly, and making an unsafe lane change caused the accident, rather than defendant's speed of over 100 miles

9

per hour just a few seconds prior to impact. The court rejected defendant's attempt to introduce evidence that the victim's driving violated certain Vehicle Code provisions, although the court did permit the defendant to argue that his driving was not a substantial factor in causing the collision.

On appeal, defendant re-asserts the position that the court improperly excluded evidence that the victim's driving violated the Vehicle Code. We disagree. The fact that the victim's actions might have also violated provisions of the Vehicle Code was irrelevant because contributory negligence is not a defense to murder and defendant was fully able to present his theory that her driving was a substantial factor in causing the accident without evidence of legal conclusions that her driving violated provisions of the Vehicle Code.

We review a trial court's ruling on the relevance, admission, or exclusion of evidence under the abuse of discretion standard. (*People v. Harrison* (2005) 35 Cal.4th 208, 230.) We reverse only if the trial court's ruling is in an ""'"arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328-1329.)

Defendant argues the evidence that the victim's driving violations were relevant to the issue of causation of the collision. However, evidence that the victim may have been in violation of Vehicle Code infractions does not logically tend to prove that the person committing them (if they were committed) was the cause of the collision. At best, it might show contributory negligence, to the extent that violation of a duty imposed by the

10

Vehicle Code may have contributed to the collision, but a crime victim's contributory negligence is not a defense to a crime. (*People v. Marlin* (2004) 124 Cal.App.4th 559, 569, citing *People v. Harris* (1975) 52 Cal.App.3d 419, 426–427; *People v. Rodgers* (1949) 94 Cal.App.2d 166, 167; *People v. Marconi* (1931) 118 Cal.App. 683, 687–688.)

It was therefore proper for the trial court to exclude such evidence. Even if it could be considered error, defendant was able to and did present evidence in the form of an accident reconstruction expert's opinion that the victim's driving was the proximate cause of the collision, so the proper exclusion of the evidence of assumed violations of the Vehicle Code did not cause prejudice.

Defendant also argues that the exclusion of the evidence violated his federal constitutional rights to due process and to present a defense. However, "'contributory negligence is not available as a defense or excuse for crime.'" (*People v. Schmies* (1996) 44 Cal.App.4th 38, 46, citing *People v. Rodgers, supra,* 94 Cal.App.2d at p. 167.) "The conduct of the victim or other third persons, whether negligent or even criminally proscribed, is not, in itself, a defense to crime." (*Schmies, supra,* citing *People v. McGee* (1947) 31 Cal.2d 229, 240, among other authorities.)

Because the conduct of the victim is not a defense to the defendant's criminal act, he had no due process right to present the evidence as a defense. There was no error.

2.      *The Trial Court Properly Refused to Instruct the Jury on Vehicle Code violations the Decedent May have Committed.*

11

During in limine proceedings, the court ruled that it would not permit defendant to introduce evidence regarding the Vehicle Code sections that the victim purportedly violated. However, it did agree to instruct on CALCRIM Nos. 240 and 2100 regarding causation and concurrent causation of injury or death. Later, during the conference on jury instructions, defense counsel did not request any instructions regarding Vehicle Code violations. On appeal, defendant argues he was entitled to have the jury instructed on the elements of certain Vehicle Code provisions that the victim may have committed. We disagree.

A trial court must instruct on the general principles of law governing the case, i.e., those principles relevant to the issues raised by the evidence but need not instruct on specific points developed at trial. "'"The most rational interpretation of the phrase 'general principles of law governing the case' would seem to be as those principles of law *commonly* or closely and openly connected with the facts of the case before the court." [Citations.]'" (*People v. Michaels* (2002) 28 Cal.4th 486, 529-530, quoting *People v. Flannel* (1979) 25 Cal.3d 668, 680-681.)

A defendant is entitled to a pinpoint instruction, upon request, only when appropriate. (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Evidence that has been proffered in an attempt to raise a doubt on an element of a crime which the prosecution must prove beyond a reasonable doubt may, but only upon request, justify the giving of a pinpoint instruction that "does not involve a 'general principle of law' as that term is used

in the cases that have imposed a sua sponte duty of instruction on the trial court." (*Id*. at p. 1120; see also, *People v. Jennings* (2010) 50 Cal.4th 616, 674-675.)

Pinpoint instructions relate particular facts to a legal issue in the case or "'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi." (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 885.) "They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte." (*Saille, supra,* 54 Cal.3d at p. 1119; *People v. Rincon-Pineda, supra,* 14 Cal.3d at p. 885.) A defendant bears the burden of requesting a pinpoint instruction, and the failure to do so results in forfeiture. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824, citing *People v. San Nicolas* (2004) 34 Cal.4th 614, 669.)

Here, defendant forfeited this claim by failing to request pinpoint instructions. (*People v. Jennings, supra,* 50 Cal.4th at pp. 671-672.) He had made requests to allow testimony regarding Vehicle Code violations he believed were committed by the victim. But he did not request the pinpoint instructions relating to the Vehicle Code violations during the conferences on the topic with the court and counsel.

Nevertheless, lacking any supportive evidence in the record, and no viable theory to compel admission of such evidence, there was no error. (*People v. Gutierrez, supra*, 45 Cal.4th at p. 824 [third party culpability instruction not required where no direct or circumstantial evidence linked a third person to the crime].) There was no error.

3. *Vehicular Manslaughter Is Not a Lesser Included Offense Within the Crime of Murder, so there Was No Error In Refusing to so Instruct*.

13

Defendant argues that the trial court erred by refusing to instruct on the elements of vehicular manslaughter (Pen. Code, § 192, subd. (c)) as a lesser included offense. He also claims the error violated his due process rights. We disagree.

At the outset, we acknowledge that a trial court must instruct on all lesser included offenses supported by substantial evidence. (*People v. Duff* (2014) 58 Cal.4th 527, 561, citing *People v. Breverman* (1998) 19 Cal.4th 142, 154–155.) The duty arises where there is evidence in the record from which a reasonable jury could conclude the defendant is guilty of the lesser, but not the greater, offense. (*People v. Verdugo* (2010) 50 Cal.4th 263, 293; *People v. Avila* (2009) 46 Cal.4th 680, 705.)

To determine whether one crime is necessarily included in another, courts apply either the accusatory pleading test or the statutory elements test. (*People v. Shockley* (2013) 58 Cal.4th 400, 404.) Under the elements test, if the statutory elements of the greater offense include all the statutory elements of the lesser offense, the lesser offense is necessarily included in the greater offense. (*Id.,* at p. 404.) Under the accusatory pleading test, the court looks to the facts actually alleged in the accusatory pleading; if the facts pled include all of the elements of the lesser offense, the latter is necessarily included in the former. (*Ibid.*)

However, where "the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense." (*People v. Robinson* (2016) 63 Cal.4th 200, 207; *People v. Fontenot* (2019) 8 Cal.5th 57, 65.)

14

Under this test, we determine whether a given crime's elements together constitute a mere subset of another crime' s elements. (*Robinson, supra,* at p. 207.) If so, the greater offense cannot be committed without also necessarily committing the lesser offense. (*Ibid.*, quoting *People v. Bailey* (2012) 54 Cal.4th at p. 748; see also, *People v. Fontenot, supra,* 8 Cal.5th at p. 65.)

Murder is defined under Penal Code section 187, subdivision (a), as the unlawful killing of another with malice aforethought. Vehicular manslaughter under Penal Code section 192, subdivision (c), can be committed by "driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." (Pen. Code, § 192, subd. (c)(1).) Alternatively, it can be committed by "driving a vehicle in the commission of an unlawful act, not amounting to a felony, but without gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence." (Pen. Code, § 192, subd. (c)(2).) Both types of vehicular manslaughter share a common element: "driving a vehicle in the commission of an unlawful act," but differ on whether gross negligence is required. (See *People v. Bettasso* (2020) 49 Cal.App.5th 1050 1058.)

But driving a vehicle in the commission of an unlawful act is not an element of murder. (*People v. Bettasso, supra,* 49 Cal.App.5th at p. 1058.) For this reason, while manslaughter has traditionally been held to be a lesser included offense of murder, this

15

tradition does not apply to types of manslaughter requiring proof of specific elements unique to vehicular manslaughter. (*People v. Sanchez* (2001) 24 Cal.4th 983, 991.) Unlike manslaughter generally, the crime of gross vehicular manslaughter while intoxicated requires proof of additional elements, not necessary to a murder conviction: (a) the use of a vehicle and (b) while intoxicated, are elements of proof under Penal Code section 191.5. Similarly, the crime of gross vehicular manslaughter pursuant to Penal Code section 192 includes the essential elements of driving a vehicle and committing an unlawful act not amounting to a felony or by gross negligence. Thus, while the lesser offense may be related to murder, they are not necessarily included in the greater offense of murder. (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 685.)

The court properly refused to instruct on the elements of gross vehicular manslaughter as a lesser included offense within the greater offense of murder.

4. *Refusal to Instruct on Lesser Related Offenses Was Proper.*

Aware that, under the weight of precedent, we would conclude that gross vehicular manslaughter is not a necessarily included offense for which instructions to the jury are required, defendant argues that the court should have instructed on that offense as a lesser *related* crime. We disagree.

The trial court has a "'"duty to instruct the jury not only on the crime with which the defendant is charged, but also on any lesser offense that is both included in the offense charged and shown by the evidence to have been committed."'" (*People v. Foster* (2010) 50 Cal.4th 1301, 1343, citing *People v. Gutierrez* (2009) 45 Cal.4th 789, 826.)

16

However, gross vehicular manslaughter, as we have pointed out *ante*, is not a lesser included offense within the greater offense of murder.

"Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) "If a lesser offense shares some common elements with the greater offense, or if it arises out of the same criminal course of conduct as the greater offense, but it has one or more elements that are not elements of the greater offense as alleged, then it is a lesser related offense, not a necessarily included offense." (*People v. Hicks* (2017) 4 Cal.5th 203, 208-209, citing *Birks, supra,* at pp. 119–120.)

Gross vehicular manslaughter is a lesser related offense within the greater offense of murder because it arises out of the same course of conduct as the greater offense but has one or more elements that are not elements of the greater offense. (*People v. Sanchez, supra,* 24 Cal.4th at p. 992.) Unfortunately for defendant, the former policy of requiring a court to instruct on lesser related offenses upon the request of a defendant pursuant to *People v. Geiger* (1984) 35 Cal.3d 510 is no longer the law. (See *Birks, supra,* 19 Cal.4th at p. 136.)

"[A] defendant has no right to instructions on lesser related offenses even if he requests the instruction and it would have been supported by substantial evidence." (*People v. Valentine* (2006) 143 Cal.App.4th 1383, 1387, citing *People v. Kraft* (2000) 23

Cal.4th 978, 1064.)  The rationale, as explained in *Birks, supra,* is that allowing the defendant to insist upon consideration of uncharged and nonincluded offenses over the prosecution's objection cannot be reconciled with the separation of powers clause of the California Constitution, because the prosecuting authorities, exercising executive functions, ordinarily have the "sole discretion to determine whom to charge with public offenses and what charges to bring." (*Birks, supra,* 19 Cal.4th at p. 134.)

Permitting a trial court to instruct on lesser related offenses over the objection of the prosecutor would interfere with that "sole discretion." (*Birks, supra,* 19 Cal.4th at p. 134; *People v. Valentine, supra,* 143 Cal.App.4th at p. 1387.)  To instruct the jury on gross vehicular manslaughter in this case would have interfered with the prosecutor's discretion.

A defendant does not have a constitutional right to jury instructions on lesser related offenses. (*Birks, supra,* 19 Cal.4th at pp. 112-113.)  We are bound by this precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

The trial court properly denied the defense request for an instruction on lesser related offenses.

### 5.     *Absent Any Errors, There is no Cumulative Prejudice*

Defendant argues that even if reversal is not compelled by virtue of any individual error, the cumulative effect of the errors claimed to have been committed requires reversal.  We disagree.

A claim of cumulative error is a due process claim based on the cumulative impact of multiple individual but harmless errors. (See, e.g., *People v. Rogers* (2006) 39 Cal.4th 826, 889-890, 911.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' [Citation.]" (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)

Here, defendant received due process and we have found no errors. There is therefore no cumulative error. "The zero effect of errors, even if multiplied, remains zero." (See *People v. Loewen* (1983) 35 Cal.3d 117, 129.)

6. *One of convictions for violating Vehicle Code section 23153, subdivision (e) must be stricken.*

Defendant was convicted of two counts of violating Vehicle Code section 23153, subdivision (e), in counts 2 and 3. At sentencing, the court stayed the term for count 3.[5] On appeal, defendant argues that multiple convictions for driving under the influence of drugs are prohibited. The People concede.

A defendant cannot be charged with multiple counts of violating Vehicle Code section 23153 arising from a single act of driving, even if more than one person is injured. (*Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 349, 353 [superseded by statute on other grounds as stated in *People v. Elder* (2017) 11 Cal.App.5th 123, 139 [217

---

[5] The court incorrectly calculated the stayed term using one-third the middle term for the substantive offense. While the count must be stricken, the proper sentence for a stayed count is the full sentence.

Cal.Rptr.3d 493]]; see also *People v. Walker* (2014) 231 Cal.App.4th 1270, 1276; *People v. McFarland* (1989) 47 Cal.3d 798, 802.)

A charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute -- the gravamen of the offense -- has been committed more than once. (*Wilkoff, supra*, 38 Cal.3d at p. 349.) The act prohibited by Vehicle Code section 23153 is the act of driving a vehicle while under the influence of alcohol or drugs. (*Wilkoff, supra* at p. 349.) Defendant committed only one act of driving, so multiple convictions under Vehicle Code section 23153 are unlawful.

The sentence is modified to strike count 3 along with its attendant enhancement for great bodily injury.[6]

**DISPOSITION**

The sentence is modified to strike the conviction and sentence on count 3. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

---

[6] Vehicle Code section 23558, which originally went into effect in 1999 (see Stats 1998 ch 118 § 84 (SB 1186), operative July 1, 1999), and has been in its current form since 2008 (see Stats 2007 ch 747 § 34 (AB 678), effective January 1, 2008), provides "[a] person who proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of Section 23153, or violation of Section 191.5 of, or subdivision (a) of Section 192.5 of, the Penal Code, shall, upon a felony conviction, and notwithstanding subdivision (g) of Section 1170.1 of the Penal Code, receive an enhancement of one year in the state prison for each additional injured victim."

20

McKINSTER           
                                    J.

RAPHAEL            
                                    J.